IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

MICHAEL T. ALEXANDER,                )
                                     )
            Plaintiff,               )
                                     )
                                     )        CIV-05-608-L
v.                                   )
                                     )
JO ANNE B. BARNHART,                 )
  Commissioner of Social Security    )
    Administration,                  )
                                     )
            Defendant.               )

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his application for disability insurance benefits under Title

II of the Social Security Act, 42 U.S.C. §§ 416(i), 423.   Defendant has answered the

Complaint and filed the administrative record (hereinafter TR___).   The matter has been

referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C.

§ 636(b)(1)(B).   For the following reasons, it is recommended that the Commissioner's

decision be affirmed.

I. Background

Plaintiff filed his application on August 8, 2001, alleging he became disabled on

March 17, 1994. (TR 93-96).  Plaintiff stated he was unable to work because of a "disc injury," heart attack/stroke, high blood pressure, and hypoglycemia. (TR 102).  Plaintiff also stated he was not able to bend or work in a kneeled position, that he cannot tolerate extreme cold or heat, and that he has impaired vision. (TR 102).  Plaintiff stated he stopped working due to these conditions on March 17, 2001. (TR 102).  He described past work as a self-employed concrete subcontractor between 1980 and March 2001.  (TR 103, 111-112, 120-122).  Plaintiff stated he also has "pinched nerves in upper and middle back and neck causing severe pain and migrain [sic] headaches." (TR 134).  He described spending twenty hours of each day "in bed" and stated that he could not afford medical treatment and that the Veteran's Administration "will not take care of me as needed." (TR 134).  Plaintiff's application was administratively denied. (TR 69, 70).  At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Parrish ("ALJ") on July 25, 2002. (TR 285-311).  Following this hearing, the ALJ issued an unfavorable decision. (TR 28-32). The Appeals Council considered Plaintiff's request for review of this decision and reversed the decision for a supplemental hearing and new decision to correct several errors in the ALJ's evaluation of the evidence. (TR 33-37).  A supplemental hearing was conducted before the ALJ on September 8, 2004. (TR 312-332).  At both of these hearings, Plaintiff and a vocational expert ("VE") testified.

Following the supplemental hearing, the ALJ issued a decision in November 2004 in which the ALJ found that Plaintiff has severe impairments due to hypertension, degenerative disc disease, and headaches. (TR 13-19).  Despite these severe impairments, the ALJ found

2

that Plaintiff has the residual functional capacity ("RFC") to perform work at the light or sedentary exertional levels which does not require more than occasional stooping, kneeling, or crouching. (TR 17).  The ALJ found that this RFC precludes the performance of Plaintiff's past work as a concrete subcontractor or concrete finisher.  Relying on the VE's testimony regarding the availability of jobs for an individual with Plaintiff's RFC for work, the ALJ found that there are other jobs available in the economy which Plaintiff can perform, including the light, semi-skilled jobs of hardware sales and laser beam machine operator and the sedentary, semi-skilled jobs of semi-conductor assembler and  command control specialist. (TR 17-18).  Based on these findings, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (TR 17-18).  The agency's Appeals Council declined Plaintiff's request to review the administrative decision (TR 5-7), and Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

## II. Claims and Defenses

Plaintiff contends that there is not substantial evidence to support the ALJ's decision because the ALJ erred in relying on incomplete vocational testimony which failed to enumerate specific transferable skills.  Plaintiff also contends that the ALJ erred in analyzing the Plaintiff's credibility.  Defendant Commissioner responds that no error occurred in the ALJ's evaluation of the evidence and that substantial evidence supports the ALJ's decision.

## III. Standard of Review

Judicial review of this Complaint is limited to determining whether    the

3

Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). The court will look to the record as a whole to determine whether the evidence which supports the Commissioner's decision is substantial in light of any contradicting evidence. Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir. 1984); Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983)(per curiam). If the Commissioner fails to apply the correct legal standard or substantial evidence does not support the Commissioner's decision, the court may reverse the Commissioner's findings. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)(per curiam). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence in the record, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§416(i). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520(b)-(f) (2005); see also Williams v. Bowen, 844 F.2d 748, 750-752 (10th Cir. 1988)(describing five steps in detail). The claimant bears the initial burden of proving that

4

he has one or more severe impairments.  20 C.F.R. § 404.1512 (2005); <u>Turner v. Heckler</u>,

754 F.2d 326, 328 (10th Cir. 1985).  Where the plaintiff makes a *prima facie* showing that

he can no longer engage in prior work activity, the burden of proof shifts to the

Commissioner to show "the claimant retains the capacity to perform an alternative work

activity and that this specific type of job exists in the national economy." <u>Turner v. Heckler</u>,

754 F.2d at 328; <u>Channel v. Heckler</u>, 747 F.2d 577, 579 (10th Cir. 1984).

IV. <u>VE Testimony Regarding Transferability of Skills</u>

The Commissioner found that Plaintiff was not disabled at step five of the requisite

sequential evaluation procedure.  At this step, as Plaintiff correctly points out, it is the

Commissioner's burden to establish that Plaintiff has the capacity to perform other work that

is available in the national economy, in light of his age, education, and work experience.

<u>Williams</u>, 844 F.3d at 751.  During the supplemental administrative hearing, Plaintiff

testified he was 45 years old. (TR 288).  Plaintiff described previous work as a concrete

subcontractor and cement finisher.  He stated that he became disabled in March 1994 but that

he continued performing this type of work on a part-time basis until November 2000. (TR

68, 288-290, 315).  The VE testified that Plaintiff's previous work is classified in the United

States Department of Labor's <u>Dictionary of Occupational Titles</u> as light and skilled work, but

that according to Plaintiff's description of this work he performed it at the heavy exertional

level. (TR 328-329).  At the first administrative hearing, the VE testified that Plaintiff's past

work in construction would afford him transferable skills, including the skills of supervision

and hiring of employees, providing bid contracts on various jobs, and a knowledge of

5

purchasing of supplies and materials. (TR 308).  In the ALJ's decision, the ALJ found that Plaintiff obtained skills from his previous work of purchasing, submitting bids, and supervision that are transferable to other work within his RFC. (TR 18).  Relying on the VE's testimony at the supplemental hearing regarding the availability of jobs for an individual with Plaintiff's vocational characteristics, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act.  The ALJ referred to the jobs identified by the VE at the supplemental hearing as jobs which Plaintiff could perform despite his exertional limitations. (TR 18).

The Social Security Administration has adopted a regulatory framework which allows an administrative factfinder to take notice of the agency's Medical-Vocational Guidelines, or "grids," in ascertaining the availability of jobs at the fifth step of the sequential evaluation procedure.  The grid's "table rules reflect the potential occupational base of unskilled jobs for individuals who have severe impairments which limit their exertional capacities." SSR 85-15, 1985 WL 56857, at * 1.  "When a claimant's exertional level, age, education, and skill level (i.e., work experience) fit precisely within the criteria of a grid rule, the ALJ may base a determination of nondisability conclusively on the grids." Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  However, when there are additional exertional or nonexertional limitations, i.e., a need for a job with a sit or stand option, or when the ALJ finds that the claimant has acquired skills that will transfer to other work, then the ALJ may not rely on the shortcut provided in the agency's Medical-Vocational Guidelines. Id.

In this case, the ALJ found that Plaintiff has the RFC to perform work at the light or

sedentary exertional levels with the additional exertional limitations of an inability to perform more than occasional stooping, crouching, or kneeling. (TR 17-18).  The agency has recognized that an individual who can perform occasional stooping, crouching, or kneeling can perform substantially all of the jobs at the light or sedentary exertional levels. SSR 85-15, 1985 WL 56857, at * 7.  The ALJ could therefore have relied exclusively on the grids in meeting the Commissioner's step five burden of proof.  However, taking a more cautionary approach to Plaintiff's case and in light of the ALJ's finding that Plaintiff has transferable skills, the ALJ elicited vocational testimony to assist in the identification of jobs falling within Plaintiff's specific RFC level.

In response to the ALJ's hypothetical inquiries, the VE testified at the supplemental hearing that the hypothetical individual could perform the light jobs of general hardware sales and laser beam machine operator, the sedentary, semi-skilled job of semi-conductor assembler, and the sedentary, skilled job of command and control specialist. (TR 329-330). The VE provided testimony regarding the numbers of these jobs that are available in the national and Oklahoma economies. (TR 330).  The ALJ relied on this vocational testimony in finding that Plaintiff is not disabled.

Plaintiff contends that the VE who testified at the supplemental hearing failed to specify which of Plaintiff's skills were transferable, and that this error requires the Commissioner's decision be reversed.  The ALJ's decision reflects the ALJ's finding that Plaintiff has transferable skills, and the ALJ expressly identified those skills.  The VE who testified at Plaintiff's first administrative hearing provided the evidence concerning

7

transferability of skills upon which the ALJ relied.  Plaintiff contends that, because the VE at the supplemental hearing "was not privy to the VE's testimony from the first hearing" and because there is nothing indicating the VE at the supplemental hearing concurred with the VE's assessment of transferability of skills at the first hearing, there is not substantial evidence in the record concerning the transferable skills that were considered by the VE in identifying jobs.

In response to this contention, the Commissioner first asserts that the ALJ found Plaintiff had no transferable skills. This argument is contrary to the record.  In the ALJ's decision, the ALJ found that Plaintiff has skills, which he identified as "purchasing, submitting bids, and supervision," obtained from his previous work that are transferable to other work. (TR 17).  However, the ALJ also found that the Medical-Vocational Guidelines, or "grids," could be applied to determine that, considering individuals of the claimant's age, education, and previous work experience who have an RFC for light work, claimant is "not disabled," citing Rule 202.21. (TR 17).  This rule governs claimants who are younger individuals (aged 45-49), who are high school graduates or who have more education, who have skilled or semi-skilled work experience, and whose skills are not transferable to other work.  20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.21.  Applying these vocational characteristics, the rule provides that the individual is not disabled.  The agency has recognized that "when the table rules in Appendix 2 are applicable to a case, transferability will be decisive in the conclusion of 'disabled' or 'not disabled' in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of

8

'not disabled' may be based on the ability to do unskilled work." SSR 82-14, 1982 WL 31389, at *1.  Nevertheless, even though the ALJ alternatively relied on the grids in finding Plaintiff is not disabled, the ALJ's specific finding that Plaintiff has transferable skills which can be applied to other work available in the economy must be supported by substantial evidence in the record.

With regard to the issue of transferability of skills in this case, there is no reason to assume that the VE who testified in Plaintiff's supplemental hearing was unaware of or did not concur with the vocational testimony elicited at the first hearing.  During the supplemental hearing, the ALJ questioned the VE as to whether the VE had reviewed "the relevant portions of the file," and the VE testified that she had done so. (TR 328).  The VE testified, similarly to the VE's testimony at the first hearing, that Plaintiff's prior work as a concrete subcontractor or supervisor was typically performed at the light, skilled level, but that according to Plaintiff's description of this prior work it was performed at the heavy or very heavy exertional level. (TR 328-329).  The ALJ adopted the VE's testimony regarding the availability of jobs in the economy for an individual with Plaintiff's age, education, work experience, and RFC for work.  Plaintiff has not pointed to any conflict between the vocational testimony that was elicited at the first hearing and the VE's testimony at the supplemental hearing.  Although the VE who testified at the supplemental hearing did not identify the specific skills which were transferable from Plaintiff's previous work, this vocational testimony concerning transferability of skills appears in the record, and it is assumed, based on the VE's responses during the supplemental hearing, that the VE was

9

aware of and concurred with this earlier testimony when the VE identified skilled and semi-skilled jobs which an individual with Plaintiff's vocational characteristics, including Plaintiff's prior work experience, can perform.  No error occurred in this regard.

V. Credibility

Plaintiff next contends that the ALJ erred in analyzing the credibility of Plaintiff's complaint of disabling pain.  Although Plaintiff contends that the ALJ's credibility determination was based on "mistaken observations from the medical record," Plaintiff does not elaborate on this contention or point to instances in which the ALJ misinterpreted the record.  The framework for evaluating this issue is well-established.  To find that a claimant's pain is disabling, the "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."  Brown v. Bowen, 801 F.2d 361, 362-363 (10th Cir. 1986)(internal quotation omitted).  "Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence." Ellison v. Secretary of Health & Human Servs., 929 F.2d 534, 537 (10th Cir. 1990).

In assessing the credibility of a subjective allegation of disabling pain, the ALJ must consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the province of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991); see Luna v. Bowen, 834 F.2d 161,

165-166 (10th Cir. 1987).

Plaintiff first asserts that the ALJ's decision does not reflect a "detailed analysis" of his credibility determination.  To the contrary, the ALJ's decision reflects a lengthy discussion of the reasons the ALJ found Plaintiff's complaint of disabling pain was not wholly credible.  (TR 16).  The ALJ noted that objective clinical findings and test results were not consistent with Plaintiff's allegation of disabling pain. The ALJ reasoned that although Plaintiff has a spinal disorder, no surgery has been recommended for this condition and only conservative treatment with medication has been prescribed. (TR 16).  Additionally, the ALJ referred to the record showing that Plaintiff "frequently requests pain medication but has refused referral to pain management.  The claimant became argumentative and insistent for narcotics during a medical appointment.  The claimant was not particularly concerned when he was urged to avoid narcotics due to syncope.  He appeared more intent on obtaining the narcotics than much else." (TR 16).  Furthermore, the ALJ reasoned that although Plaintiff alleged he became disabled in March 1994, he continued to perform some work after that date and his earnings after that date were

> not in sharp contrast with the earnings posted for a number of years after 1983.  In fact, his earnings in tax years 1984 through 1987 and again in 1989 and 1990 were actually exceeded during some of the tax years after 1994 when he allegedly became disabled.  The claimant has not earned in excess of $10,000.00 since 1983.  The claimant's earnings record is punctuated by relatively low earnings and is not particularly impressive even during the years when he was employed and does not allege disability.

(TR 16-17).  Finally, the ALJ concluded that "[t]he claimant's allegations are not

11

substantiated by the medical evidence to the extent alleged and are not sufficiently credible to support a finding of disability." (TR 17).

The ALJ's credibility determination is not conclusory, and it is well supported by the evidence in the record. X-rays and MRI scans of Plaintiff's lumbar spine show the presence of degenerative disc disease. (TR 193-194, 197-200, 207, 276). Records show Plaintiff has been conservatively treated for this condition with medications by physicians at the Veteran's Administration hospital where he received treatment in 1996, again in 2001 and 2002, and again in February to April of 2004. Plaintiff's treating doctors have noted that he exhibits drug-seeking behavior, narcotic habituation, and possible substance abuse on several occasions.. (TR 149, 171, 219, 266-267). In November 2001, an echocardiogram was interpreted by his treating physicians as showing a dilated aortic root, normal global left and right ventricular function, no significant mitral regurgitation, and mitral valve prolapse. (TR 246). In May 2002, Plaintiff's treating physicians noted that Plaintiff's chest pain was atypical and advised him to take aspirin daily. Medication was prescribed for Plaintiff's high blood pressure. (TR 236). In May 2002, an echocardiogram was interpreted as being negative for ischemic criteria and showing normal left ventricular function. However, the interpreting physician noted the test showed "findings consistent with ischemia in the septum and small area of the anterolateral region." (TR 234). Plaintiff also reported in May 2002 that he was consuming alcohol daily after being taken off of narcotic pain medications. (TR 231). Muscle relaxant medication was prescribed for Plaintiff's chronic low back pain, and his medication for hypertension was changed. (TR 229-230. Plaintiff declined mental health

treatment in February and in May 2002 although he reported feeling sad or depressed. (TR 231, 244-245). In July 2002, Plaintiff reported to his treating doctors that he was "blacking out" over the previous month and that this condition had resulted in two car accidents. (TR 226). The examining physician noted Plaintiff's syncope was possibly related to mitral valve prolapse but Plaintiff declined admission for further evaluation of his syncope, and his request for narcotic pain medication was denied because of the syncope. (TR 220, 225). Holter monitor testing conducted in October 2002 was normal. (TR 273). In October 2002, Plaintiff reported the last syncopal episode was five to six months previously. (TR 270). A treating physician noted in October 2002 that Plaintiff "keeps requesting narcotics" and that Plaintiff needed to be taking anti-depressant medication, not narcotic medications. (TR 266-267). An electroencephalogram conducted in October 2002 showed no significant abnormalities, according to the interpreting physician. (TR 264-265). Although Plaintiff was given an "event recorder" to use to "record [his heart] rhythm during [syncope] episodes" in December 2002, there are no notes of further treatment for this symptom. (TR 262). Plaintiff returned to his treating clinic in February 2004, requesting medication refills. (TR 252). The examining physician noted that Plaintiff exhibited "poor compliance with treatment." (TR 253). Hypertension, muscle relaxant, and anti-inflammatory medications were prescribed, and Plaintiff was advised to stop smoking and see the clinic's dietitian. (TR 253). The examining physician noted that Plaintiff exhibited decreased range of motion in his lumbar and neck areas, that he was not cooperative for a straight leg raising test, and that his gait was normal. (TR 252). In March 2004, Plaintiff's treating physicians noted that "the

13

diagnosis of ischemic heart disease is not substantiated in this patient." (TR 249).  In April

2004, Plaintiff again requested narcotic pain medication from his treating clinic's physicians.

The examining physician noted that Plaintiff "refused to listen" to an explanation of x-ray

results and "declined" a referral to a pain management clinic.  (TR 247).  The physician also

noted that Plaintiff's request for narcotic pain medication was refused because of his history

of syncope and three motor vehicle accidents in the previous six months. (TR 247).

The record provides substantial evidence to support the ALJ's credibility

determination, and the credibility determination will therefore not be disturbed.  Plaintiff

does not challenge the ALJ's RFC determination aside from the credibility analysis.  The

record reflects substantial evidence to support the ALJ's finding that Plaintiff is capable of

performing light or sedentary work that does not require more than occasional stooping,

kneeling, or bending.  Plaintiff testified in September 2004 that he was not being treated at

the Veteran's Administration clinic and was seeing a chiropractor whose treatment of his

neck and headache pain was helpful.  (TR 318, 321, 324).  Plaintiff testified he could sit for

up to two hours and stand for up to two hours, walk two blocks, and lift 25 to 50 pounds, and

that he drives one to two times per week and can bend or squat down but has difficulty

getting back up. (TR 324-325).  He also stated he was taking only blood pressure and anti-

inflammatory medication and had experienced only one black-out episode since his first

administrative hearing in July 2002. (TR 322, 324).  Because there is substantial evidence

in the record to support the Commissioner's decision, the decision should be affirmed.

<u>RECOMMENDATION</u>

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for disability insurance benefits.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before __March 22__, 2006, in accordance with 28 U.S.C. § 636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this ____2nd____ day of ____March____, 2006.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE